IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Dennis D. McCaughey, | : | |
| | : | Case Nos. 1:02-cv-732 |
| Plaintiff, | : | 1:02-cv-767 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| Garlyn Shelton, Inc., *et al.*, | : | ORDER |
| | : | |
| Defendants. | : | |

This matter comes before the Court on Plaintiff's Second Motion for Partial Summary
Judgment (Liability Only) Against Garlyn Shelton, Inc. (doc. 65) and Defendant Garlyn Shelton,
Inc.'s Motion for Summary Judgment (doc. 66).[1]  Plaintiff Dennis D. McCaughey asserts a claim
for conversion against Defendant Garlyn Shelton, Inc. ("GSI") for re-taking possession of a
motor vehicle–which had been stolen from it by a third-party wrongdoer–from McCaughey, a
purported good faith purchaser for value.  Both parties seek summary judgment as to the issue of
GSI's liability on the conversion claim, and GSI additionally seeks summary judgment on the
issue of damages.  For the reasons that follow, McCaughey's motion is **GRANTED** and GSI's
motion is **DENIED** as to liability and **GRANTED IN PART AND DENIED IN PART** as to
damages.

---

[1] The citations to the CM/ECF docket system refer to Case No. 1:02-cv-732.  McCaughey
filed two cases in October 2002 arising from the facts herein.  McCaughey filed a complaint in
Case No. 1:02-cv-732 against the City of Blue Ash, Ohio and a complaint in Case No. 1:02-cv-
767 against Garlyn Shelton, Inc.  The actions have been consolidated and the more recent filings
in the action against Garlyn Shelton, Inc. have been filed in Case No. 1:02-cv-732.

I.     **BACKGROUND**

A.     **Factual Background**

The following statement of facts is derived primarily from the parties' submission of proposed undisputed facts and the responses thereto.  (Docs. 67-2, 70-2, 70-3, 74-2.)

In 2001, GSI, a automobile dealer doing business in Texas, was the victim of a car theft ring wherein faulty bank drafts were issued to GSI for several 2002 BMW vehicles.  In January 2002, GSI delivered possession of a 2002 BMW vehicle to a business in Texas known as Millennium Auto Leasing ("Millenium").  On February 7, 2002, Millenium transferred the BMW to a dealer doing business in Texas under the name R.K. Investments ("R.K.").  Millenium endorsed the certificate of title and delivered possession of the car and the certificate to R.K.

On February 10, 2002, GSI discovered that Millennium's bank draft had been dishonored for insufficient funds.  GSI reported multiple BMW vehicles as stolen, including the vehicle which had been transferred to R.K., to the Texas Department of Public Safety and the Temple, Texas Police Department.  The police listed the vehicles on the National Crime Information Center database.  GSI also filed a lawsuit against Millennium.  On February 11, 2002, the District Court of Bell County, Texas issued an Order for the Issuance of Writ of Sequestration, which commanded that GSI should "obtain possession of said vehicles and hold them subject to further order."  (Doc. 66-2.)  The District Clerk issued the Writ of Sequestration to Millennium providing it notice that GSI was authorized to take possession of the subject vehicles.  (Doc. 66-3.)  Millennium, however, was no longer in possession of the BMW which it had transferred to R.K.

On February 14, 2002, R.K. sold the BMW to McCaughey, a consumer and a resident of Ohio, through an internet sale for a purchase price of $72,000. R.K. endorsed the certificate of title and shipped both the title certificate and the vehicle to McCaughey in Ohio. McCaughey received the endorsed title on February 15, 2002 and the vehicle on February 18, 2002. McCaughey did not apply for a certificate of title in his own name in either Texas or Ohio. The existing certificate of title of which McCaughey had possession was issued by the Texas Department of Transportation, listed GSI as the "previous owner" and Millennium as the "owner" on the front side, and had endorsements from Millennium to R.K. and from R.K. to McCaughey on the back side.

In April 2002, McCaughey submitted an application for Certificate of Title and for vehicle registration in Florida. As part of this process, McCaughey requested that police officers in Blue Ash, Ohio verify the vehicle identification number ("VIN") for the BMW. The police officers discovered in the National Crime Information Center database that the vehicle had been reported stolen in Texas. The Blue Ash police officers impounded the car. The police officers discovered the Texas court Writ of Sequestration as part of their investigation. The police officers notified GSI that the BMW had been recovered, and later, released the vehicle to a driver hired by GSI to return the vehicle to GSI in Texas.

**B.  Procedural Background**

McCaughey filed these consolidated actions on October 9, 2002 and October 23, 2002 against the City of Blue Ash and GSI, respectively, for claims arising from the repossession of the BMW vehicle he had purchased. In an Order dated March 3, 2005, the Court held, in part, that GSI had a greater interest in the BMW than McCaughey under Ohio and Texas law, and that

McCaughey's conversion claim against GSI failed as a matter of law.  (Doc. 47 at 1, 13-14.)

GSI filed an appeal.  The Sixth Circuit reversed and remanded.  McCaughey v. Garlyn Shelton, Inc., No. 05-3450, 208 F. App'x 427 (6th Cir. Dec. 20, 2006).  The Sixth Circuit held that Ohio law governed the conversion claim, but that Texas law determined the parties' ownership rights in the car.  Id. at 430-31.  The Court further held that under Texas law R.K.'s ownership interest was superior to GSI's and that McCaughey's ownership interest was superior to R.K.'s.  Id. at 433.  The court explained: "Of course, R.K. has made no claim of ownership and this portion of the analysis merely demonstrates that because R.K.'s ownership interest extinguished GSI's, and McCaughey's interest defeats R.K.'s, then under Texas law McCaughey's interest must be superior to GSI's."  Id.  The Court concluded this portion of its analysis by stating that "McCaughey is the legal owner" of the BMW under Texas law.  Id. at 434.

The Sixth Circuit next found that even if Ohio law had governed the ownership interest question, McCaughey would have equitable ownership of the BMW.  Id.  Finally, the Sixth Circuit addressed the issue of the conversion claim under Ohio law.  The court focused its short analysis of the claim on the issue of whether an equitable ownership interest was sufficient to assert a conversion claim.  Id. at 435.  The Sixth Circuit held as follows:  "We conclude that it is not necessary to determine whether McCaughey had legal title to the vehicle or merely equitable title.  His ownership interest was clearly sufficient to support his conversion claim against GSI."  Id.  The court clarified its holding in the subsequent paragraph by stating that McCaughey's "interest was sufficient to support a prima facie case of conversion under Ohio law."  Id.  The Sixth Circuit then remanded for further proceedings consistent with its decision.  Id.

On remand now, McCaughey and GSI have both moved for summary judgment on the issue of GSI's liablity to McCaughey for conversion. GSI has also moved, alternatively, for summary judgment on the issue of damages.

## II.  STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

5

III.     ANALYSIS

A.      **Elements of Conversion**

"Under Ohio law, conversion is 'the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" McCaughey, 208 F. App'x at 435 (quoting Joyce v. Gen. Motors Corp., 49 Ohio St. 3d 93, 551 N.E.2d 172, 175 (1990)). To establish a prima facie claim of conversion, a plaintiff must prove three elements: "(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." City of Findlay v. Hotels.Com, L.P., 441 F. Supp. 2d 855, 865 (N.D. Ohio 2006); see also Preston Trucking Co., Inc., Frontier Div. v. Lindamood, No. CA86-12-076, 1987 WL 18758, *2 (Ohio App. Oct. 19, 1987) (splitting the ownership element into two elements: (1) ownership or interest and (2) right to possession).

Though a taking must be wrongful to support a conversion action, mistake or good faith are not defenses to a conversion action. Dice v. White Family Cos., Nos. 22057, 22060, – N.E.2d –, 2007 WL 3121803, *5 ¶ 28 (Ohio App. Oct. 26, 2007); Busch v. Premier Integrated Med. Assoc., Ltd., No. 19364, 2003-Ohio-4709, 2003 WL 22060392, *13 ¶ 98 (Ohio App Sep. 5, 2003). However, "[e]xceptions [to the doctrine that good faith is not a defense] may exist in cases where the alleged converter was under a duty to protect the public or was acting pursuant to a facially valid court order." Estate of Alkhaldi v. Khatib, No. 04 MA 285, 2005 WL 3111001, *3 ¶ 19 (Ohio App. Nov. 18, 2005). "If a person . . . acts pursuant to a facially valid judgment, he should be able to rely upon that judgment without concern of being sued in

6

conversion if that judgment is later reversed or nullified." <u>Penrod v. Prosecuting Attorney of Scioto County</u>, Nos. 1771, 1818, 1990 WL 42285, *5 (Ohio App. Apr. 4, 1990). The <u>Penrod</u> court relied on the Restatement Second of Torts, which states that "[o]ne is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face." Rest. 2d Torts § 266 (2007).[2]

In the Rule 56 cross-motions, GSI and McCaughey both assert that they are entitled to summary judgment on the merits of the conversion claim. McCaughey contends that he is entitled to summary judgment against GSI on the grounds that the Sixth Circuit established a law of the case that McCaughey was the rightful owner of the BMW sufficient to support a conversion claim. GSI, on the other hand, asserts that the Sixth Circuit determined only the ownership element of conversion and that the Sixth Circuit did not establish a law of the case regarding the wrongful taking element. GSI further asserts that its re-taking possession of the BMW was not wrongful, even if McCaughey had a greater ownership right, because it had a privilege to act in reliance on the facially valid Texas court order, the Writ of Sequestration.

**B.     Applicability of the Law of the Case Doctrine**

Based on the foregoing discussion, the Court first must determine whether the law of the case doctrine requires the Court to find that GSI is liable for conversion. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Christian v. Colt Indus.</u>

---

[2] The commentary to the Restatement suggests that the provision is intended to apply to law enforcement officers who replevy property, but Ohio courts have rejected the argument that § 266 applies only to law enforcement officials. <u>Penrod</u>, 1990 WL 42285 at *5 (rejecting the argument); <u>Donnelly v. Zekan</u>, No. 19563, 2000 WL 762811, *5 (Ohio App. June 14, 2000) (applying the privilege in favor of private individuals).

Operating Corp., 486 U.S. 800, 816 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). Its purpose is "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18B Charles A. Wright et al., Federal Practice and Procedure § 4478 (2004). The "law of the case doctrine . . . generally preclude[s] a lower court from reconsidering an issue expressly or impliedly decided by a superior court." United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994). A district court generally is permitted to grant summary judgment on remand following an appellate court decision addressing the merits so long as "no evidence that controverted [the appellate court's] ruling was offered." United States v. United States Gypsum Co., 340 U.S. 76, 86 (1950).

It is the law of the case that McCaughey had a sufficient ownership interest to establish the first element of a prima facie claim for conversion–the ownership element. The Sixth Circuit found that McCaughey's ownership interest was sufficient "to support" a conversion claim or sufficient "to support a prima facie case of conversion" against GSI under either Ohio or Texas law. McCaughey, 208 F. App'x at 435. It does not necessarily follow, however, from the Sixth Circuit's ownership holding that GSI re-taking possession of the vehicle was wrongful as necessary to satisfy the second prong of the prima facie test.

GSI posits that its taking was not wrongful because it had a privilege to re-take the BMW vehicle from McCaughey by virtue of the Writ of Sequestration issued by the Texas court.[3]

---

[3] GSI relied on the Writ of Sequestration in arguing on appeal that this Court's original decision should be upheld. (Doc. 71-2.) GSI asserted that the Texas court had issued the Writ of Sequestration, revoked Millennium's title, and restored the right of possession and title to GSI before McCaughey ever obtained possession of the BMW vehicle; thus, McCaughey could not have relied on the revoked certificate of title delivered to him by R.K. to establish his ownership interest. (Id. at 8, 11, 14, 27, 29, and 32.)

GSI further posits that the Sixth Circuit did not address whether the Writ of Sequestration

created such a privilege, and therefore, that there is no law of the case on this issue to follow.

The Sixth Circuit addressed the Writ of Sequestration only briefly in its discussion of the factual

background of the case.  Id. at 429.  Describing the Writ of Sequestration in narrow terms, the

Sixth Circuit stated that the writ "authorized GSI to take possession of the car from Millennium

until such time as Millennium filed a replevy bond or dissolved the writ by court order."  Id.

The Sixth Circuit then impliedly rejected that the writ had the effect of restoring title to GSI

under Texas law:

> Therefore, as between GSI and R.K. [the third-party dealer who purchased the
> BMW from the thief, Millennium, and later sold it to McCaughey], it is R.K. that
> had the rightful ownership of the car.  GSI's cause of action was against
> Millennium for damages.
>
> * * * *
>
> McCaughey paid value [to R.K.], obtained possession of the car, and obtained
> possession of the certificate of title endorsed over to him.  R.K. had good title and
> endorsed that title over to McCaughey.
>
> * * * *
>
> [B]ecause R.K.'s ownership interest extinguished GSI's, and McCaughey's
> interest defeats R.K.'s, then under Texas law McCaughey's interest must be
> superior to GSI's.

Id. at 432-33.  Because R.K. did not sell the vehicle to McCaughey, nor deliver possession of the

vehicle or the title to McCaughey, until *after* the Texas court had issued the Writ of

Sequestration, the Sixth Circuit must have concluded that the Writ of Sequestration did not under

Texas law restore title and the right of possession to GSI against subsequent purchasers.

The conversion claim is governed by Ohio law, however, not Texas law.  Id. at 430.  The

Sixth Circuit was not called on to determine, and did not determine, whether GSI had a privilege

under Ohio conversion law to act pursuant to the facially valid Writ of Sequestration and re-take possession of the stolen BMW. Importantly, after holding that McCaughey's ownership interest under Ohio law was sufficient to support a conversion claim, the Sixth Circuit did not direct judgment in McCaughey's favor on the conversion claim. Rather, the Sixth Circuit reversed and remanded for these further proceedings. Id. at 435. Accordingly, the Court holds that the law of the case doctrine does not resolve whether GSI acted wrongfully and is liable for conversion.

**C.      Analysis of the Wrongful Act/Privilege to Act Issue**

Having determined that the law of the case doctrine is not dispositive, this Court now must determine whether GSI had a privilege under Ohio to re-take possession of the BMW. The dispositive issue is whether GSI had a privilege to act or a defense against a conversion claim created by its reliance upon the Texas Writ of Sequestration. McCaughey asserts that the privilege or defense against conversion suggested by Penrod and the Restatement Second of Torts do not apply here because McCaughey was not a party to the Texas court proceedings from which the Writ of Sequestration was issued.

The Writ of Sequestration was issued *ex parte*, but more significantly, the writ was directed only to the named defendant in the Texas case, Millennium, and its agents and employees. (Doc. 66-3.) The writ gave notice to Millennium that GSI had the right to "take possession of the following described property [including the BMW] and to keep the property subject to further order of this Court unless the property is replevied according to the provisions of the law and the Texas Rules of Civil Procedure." (Docs. 66-2, 66-3.) In dicta, the Sixth Circuit described the Writ of Sequestration as authorizing GSI to take possession of the BMW from Millennium, but the Sixth Circuit did not suggest that the Writ gave GSI authority to take

possession of the BMW from subsequent purchasers. <u>McCaughey</u>, 208 F. App'x at 429. Indeed, such an interpretation of the Writ would be unjustified because under Texas law generally, a writ of sequestration is not binding upon a person who is not party to the suit from which the writ was issued. <u>Commercial Music Co. v. Klag</u>, 288 S.W.2d 168, 171 (Tex. Civ. App. 1955); <u>see also</u> 64 Tex. Jur. 3d Replevin and Sequestration § 23 (Dec. 2007). Additionally, the Court notes that GSI has not cited to any portion of the record establishing that it, in fact, relied on the existence of the Writ when it sent an agent to Ohio to take possession of the BMW from the Blue Ash police department. Accordingly, the Court holds that GSI did not have a privilege pursuant to the Writ of Sequestration to take possession of the BMW from McCaughey, who was not the thief and to whom the Writ of Sequestration was not directed.[4]

Because GSI was not the owner of the BMW under Ohio or Texas law, and because the dealer did not have a privilege to take possession of the BMW under Ohio law, the Court finds that GSI is liable to McCaughey for conversion of the BMW. The Court will **GRANT** summary judgment to McCaughey and **DENY** summary judgment to GSI on the liability issue.

**D.     Damages**

GSI moves for summary judgment, alternatively, on the issue of damages. GSI contends that McCaughey is entitled to recover only the fair market value of the BMW at the time it was

---

[4] Because the Court has found that GSI acted unlawfully when it took possession of the BMW, McCaughey need not prove that he made a demand for a return of the BMW and was refused in order to establish his claim for conversion. "If a defendant comes into possession of property lawfully, a plaintiff must prove two additional elements to establish conversion: (1) that it demanded the return of the property after the defendant exercised dominion or control over the property and (2) that the defendant refused to deliver the property to the plaintiff." <u>State Farm Mut. Auto. Ins. Co. v. Advanced Impounding & Recovery Servs.</u>, 165 Ohio App. 3d 718, 722-23, 848 N.E.2d 534 (2006).

11

converted and that he is not entitled to recover consequential damages as a matter of law. GSI further contends that even if consequential damages are recoverable in a conversion action under Ohio law, such damages are not recoverable under the facts here. Finally, GSI contends that it is not liable for punitive damages as a matter of law.

The general measure of damages for conversion under Ohio law is "the value of the converted property at the time it was converted." State Farm Mut. Auto. Ins. Co. v. Advanced Impounding & Recovery Servs., 165 Ohio App. 3d 718, 723, 848 N.E.2d 534 (2006); see also Tabar v. Charlie's Towing Serv., Inc., 97 Ohio App. 3d 423, 427-28, 646 N.E.2d 1132 (1994) (same). Nonetheless, "there is no inflexible rule as to the measure of damages for a wrongful conversion." Fulks v. Fulks, 95 Ohio App. 515, 519, 121 N.E.2d 180 (1953). Ohio courts have substituted, when appropriate, replacement cost for or repair cost of the property converted as the measure for damages in place of the market value for the property. See G & L Investments v. Designer's Workshop, Inc., No. 97-L-072, 1998 WL 553213, *7 (Ohio App. June 26, 1998) (awarding replacement cost); Day v. Hill, No. 3-92-56, 1993 WL 186646, *1-2 (Ohio App. June 3, 1993) (using repair bill instead of market-value to determine damages). McCaughey will be entitled to establish as compensatory damages the market value of the BMW at the time it was converted, or if appropriate, a reasonable replacement cost. Prejudgment interest also may be awarded. See Cugini and Capoccia Builders, Inc. v. Ciminello's, Inc., No. 06AP-210, 2006 WL 3111800, *5 ¶ 28 (Ohio App. Sep. 19, 2006); Wozniak v. Wozniak, 90 Ohio App.3d 400, 412, 629 N.E.2d 500 (Ohio App. 1993). Neither party has sought to establish the amount of these damages as a matter of law in the cross-motions for summary judgment.

McCaughey also will be permitted to attempt to establish special damages incurred

directly to recover the BMW, including attorney fees if appropriate, separate and apart from fees incurred in this litigation. Fulks, 95 Ohio App. at 520 (permitting recovery of attorney fees as special damages as part of "compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted"); Johnson v. Thrift Sav. & Loan Co., No. C-920115, 1993 WL 323380, *9 (Ohio App. May 26, 1993) (awarding attorney fees as special damages for money spent to recover possession of the property, but not fees incurred to litigate).

The issue of attorney fees incurred during litigation overlaps with the issue of punitive damages. Punitive damages are only recoverable under Ohio tort law in actions that involve fraud, malice, or insult. See Preston v. Murty, 32 Ohio St. 3d 334, 334, 512 N.E.2d 1174 (1987). Actual malice is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Id. at syllabus. McCaughey has not established, nor even attempted to establish with evidentiary support, that GSI acted with actual malice when it re-took possession of the BMW which had been stolen from it. McCaughey will not be permitted to recover punitive damages as a matter of law.

Attorney fees arising from this litigation are not recoverable because they are dependent upon an award of punitive damages. Attorney fees can be awarded as a part of compensatory damages only if punitive damages are warranted. Zappitelli v. Miller, 114 Ohio St. 3d 102, 103, 686 N.E.2d 968 (2007); see also Fulks, 95 Ohio App. at 920 (no litigation attorney fees because no punitive damages).

Finally, consequential damages separate or independent of the types of damages

13

discussed above are not recoverable here. McCaughey apparently seeks to recover consequential damages in amount of the increased financing charges he had to pay on vehicle and home purchases as a result of his poor credit rating, which he asserts was caused by the conversion of his BMW.[5] McCaughey cites to two unpublished Ohio cases to support his position that he is entitled to consequential damages. The Court finds that both cases are distinguishable. In J.B. Walter Constr., Inc. v. Futronics, Inc., No. L-99-1080, 2000 WL 5911 (Ohio App. Jan. 7, 2000), the Ohio court upheld the denial of directed verdict on the issue of consequential damages for a conversion claim solely on the basis that the defendant had relied on inapplicable statutory law to support the motion. Id. at *2. Moreover, the appellate court in J.B. Walter Constr. went on to hold that "[t]he measure of damages in a conversion action is the value of the property at the time it was converted." Id. at *3. The court did not find that consequential damages could be recovered. In the second case cited by McCaughey, James C. Dawes Co. v. Ohio Edison Co., No. 96-BA-41, 1998 WL 355872 (Ohio App. June 30, 1998), the appellate court discussed consequential damages for the loss of use of property, but only in the context of a breach of a bailment contract claim. Id. at *3. The Dawes court also stated that the proper damages for the conversion claim was "value of the converted property at the time it was converted." Id. Because the general standard for conversion damages is clear, and because McCaughey has not demonstrated that Ohio case law that would permit additional consequential damages, the Court will not allow consequential damages as a matter of law in this case.

For these reasons, the Court will **GRANT IN PART AND DENY IN PART** summary

---

[5] The Court notes that even if consequential damages could be awarded, McCaughey would have difficulty establishing proximate causation for the types of damages he seeks.

judgment to GSI on the issue of damages.

## IV.     CONCLUSION

Plaintiff's Second Motion for Partial Summary Judgment (Liability Only) Against Garyln

Shelton, Inc. (doc. 65) is **GRANTED**.  Defendant Garlyn Shelton, Inc.'s Motion for Summary

Judgment (doc. 66) is **DENIED** as to liability, and **GRANTED IN PART AND DENIED IN**

**PART** as to damages.

**IT IS SO ORDERED.**


___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge


15